## STATE OF CONNECTICUT *v.* ROLAND BOUCHER
### (5404)

HULL, DALY and BIELUCH, Js.

Argued May 13—decision released July 28, 1987

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, were *James G. Clark,* assistant state's attorney, and *William R. Korey,* legal intern, for the appellant (state).

*James J. Sullivan,* for the appellee (defendant).

HULL, J. The defendant was charged with operating a motor vehicle while under the influence of intoxicat-

ing liquor in violation of General Statutes § 14-227a (a),[1] and failure to carry a registration in violation of General Statutes § 14-13. He was subsequently charged with failure to appear in violation of General Statutes § 53a-173. The defendant pleaded guilty to all charges except driving under the influence of intoxicating liquor (DUI). The defendant moved to dismiss the DUI charge claiming that the parking lot on which he was arrested was not "open to public use" in accordance with General Statutes § 14-212 (5).[2]

The trial court granted the defendant's motion to dismiss and subsequently granted the state leave to appeal. The sole issue presented by the state's appeal is whether the parking area where the defendant was arrested was "open to public use," thus bringing the lot within the purview of General Statutes § 14-227a (a).

The facts of this case are uncontradicted. At the time of the defendant's arrest in Manchester, he was sitting in a motor vehicle parked on a Midas Muffler parking lot with the motor running. The defendant does not contest that he was intoxicated at the time. Thus, the only question before the trial court on the charge of DUI was whether the Midas Muffler parking lot was "open to

---

[1] General Statutes § 14-227a (a) provides: *"No person shall operate a motor vehicle while under the influence of intoxicating liquor* or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, *or in any parking area for ten or more cars* or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight." (Emphasis added.)

[2] General Statutes § 14-212 (5) provides: " 'Parking area' means lots, areas or other accommodations for the parking of motor vehicles off the street or highway and *open to public use with or without charge.* " (Emphasis added.)

public use," as defined by General Statutes § 14-212 (5). If the Midas parking lot was open to public use, then the defendant is susceptible to criminal prosecution for DUI.

At trial, the defendant presented evidence that the lot was used exclusively by Midas employees and customers and that large signs inform the public that non-customers who park on the lot are subject to being towed at the owner's expense. From these facts, the trial court found (1) that the parking area was private, and (2) that the parking area was not "open to public use" as that term is used by the definitional section of the motor vehicle statute, General Statutes § 14-212 (5).

The relevant language of General Statutes § 14-227a (a) provides: "No person shall operate a motor vehicle while under the influence of intoxicating liquor . . . in any parking area for ten or more cars . . . ." Only parking areas which are "open to public use with or without charge"; General Statutes § 14-212 (5); are covered by the DUI statute. The state argues that the trial court erred in finding the Midas parking area not "open to public use" and that the plain language "open to public use" as a modifier of "parking area" brings lots like the Midas lot within the reach of the drunk driving statute. We disagree.

The state claims that the plain language of General Statutes § 14-212 (5) includes the Midas parking lot, and that, even if the statute is not clear on its face, the legislative history indicates the intention to include shopping center parking lots.[3] This is not dispositive of

---

[3] "In addition to lowering the blood alcohol content from .15 to .10, the bill does two other things that beef up our drunken driving statute: one, under present law, the only place you can be convicted of driving under the influence is on a public highway. The bill would extend that to parking lots where there is room to park more than ten cars. Now you know and

the issue presented by this case, however. The defendant does not contest the fact that private shopping center parking lots are covered by the statute. The defendant contends that the Midas parking area, which was limited to use by Midas customers and employees, did not serve the general public. This use is distinguished from off street parking at shopping centers where the user is encouraged to patronize a variety of stores.

The state does not dispute that the use of the Midas lot was limited to a restricted group. The sole question is whether the use by the restricted group is sufficient to constitute public use. A public use exists where the public has a right to receive and enjoy the benefit of the use. *Oxford* v. *Beacon Falls,* 183 Conn. 345, 347, 439 A.2d 348 (1981). Where the use is for a "limited number of persons, or a restricted group," it is not a public use. Ballentine's Law Dictionary (3d Ed.). The court must give each word and phrase in legislative acts meaning. *State* v. *Milum,* 197 Conn. 602, 619, 500 A.2d 555 (1985); *LaCroix* v. *Board of Education,* 2 Conn. App. 36, 41, 475 A.2d 1110 (1984). "Open to public use" logically distinguishes malls and other shopping center parking lots from lots that are restricted to use by a discrete class, and where that restricted use is strictly enforced.

The Indiana Appellate Court faced a similar question in *Bridgewater* v. *State,* 441 N.E.2d 688 (Ind. App. 1982). In *Bridgewater,* the defendant was arrested for DUI while parked on a bank's private parking lot. The court in *Bridgewater* found the bank parking lot open to public use because the bank acquiesced in the use of the lot by the general public after banking hours. No simi-

I know that on such a parking lot, in the shopping centers certainly, a drunken driver is as big a menace if not more in that area than on the public highway." 14 H.R. Proc., Pt. 5, 1971 Sess., pp. 2364–65, remarks of Representative John A. Carrozzella.

lar facts were presented by the state in this case. To the contrary, the defendant presented uncontradicted evidence that the lot was closed to the general public. Thus, the trial court could properly conclude that by giving the words "open to public use" their plain meaning; see *Stoni* v. *Wasicki,* 179 Conn. 372, 376–77, 426 A.2d 774 (1979); this parking lot was not open for use by the general public.

We are not called on to determine the application of the definition of "parking area" to every possible factual situation. For the facts presented in this particular case, we find the trial court properly held that the Midas Muffler parking area was not open to public use. The court cannot, by construction, read into legislation provisions not clearly stated. *State* v. *Baker,* 195 Conn. 598, 602, 489 A.2d 1041 (1985); *Finkenstein* v. *Administrator,* 192 Conn. 104, 110, 470 A.2d 1196 (1984); *Metropolitan District* v. *Barkhamsted,* 3 Conn. App. 53, 70, 485 A.2d 1311 (1984).

We thus conclude that the trial court correctly construed "open to public use" as used by General Statutes § 14-212 (5) to have a limited meaning not covering the Midas parking lot.

There is no error.

In this opinion BIELUCH, J., concurred.

DALY, J., dissenting. The question before us is whether the parking lot, where the defendant was arrested, is "open to public use," thus bringing the lot within the meaning of General Statutes § 14-227a (a). The role of the courts in cases of statutory construction is limited and, as the majority correctly stated, "we cannot read provisions into legislation." The legislative history and related statutes, however, help eliminate any ambiguity in the statute. Accordingly, I dissent.

"It is basic, of course, that a statute is to be construed as a whole and that the words used therein must be interpreted in their plain and ordinary meaning 'unless the context indicates that a different one was intended.' *Caldor, Inc.* v. *Heffernan,* 183 Conn. 566, 570, 440 A.2d 767 (1981). If the language of the statute is clear and unambiguous, it is assumed that the words themselves express the intention of the legislature and there is no room for judicial construction. *Mazur* v. *Blum,* 184 Conn. 116, 118–19, 441 A.2d 65 (1981); *Aaron* v. *Conservation Commission,* 183 Conn. 532, 548, 441 A.2d 30 (1981); *Doe* v. *Manson,* 183 Conn. 183, 186, 438 A.2d 859 (1981). 'When legislation contains a specific definition, the courts are bound to accept that definition.' (Citations omitted.) *International Business Machines Corporation* v. *Brown,* 167 Conn. 123, 134, 355 A.2d 236 (1974); *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* 148 Conn. 341, 347, 170 A.2d 883 (1961). 'Where a statute does not define a term, it is appropriate to look to the common understanding expressed in the law and in dictionaries.' *Doe* v. *Manson,* supra; *Ziperstein* v. *Tax Commissioner,* 178 Conn. 493, 432 A.2d 129 (1979). In applying the usual and accepted meaning to words not defined in a statute where to do so, as here, comports with the statutory purpose, one court stated that '[w]e derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions.' *Commonwealth* v. *Zone Book, Inc.,* 372 Mass. 366, 369, 361 N.E.2d 1239 (1977)." *Johnson* v. *Manson,* 196 Conn. 309, 316–17, 493 A.2d 846 (1985), cert. denied, 474 U.S. 1063, 106 S. Ct. 813, 88 L. Ed. 2d 787 (1986).

The issue in this case involves the definition of the phrase "open to public use." Unlike the term "parking lot," which is defined in § 14-212 (5), the legislature has not provided us with a definition of "open to

public use." A commonly understood meaning of the word "open" is "free to be entered and used." Webster, New World Dictionary (1979). The term "public use" is defined to mean: "The use of a premises by the public at large, that is, the general unorganized public, rather than by one person, a limited number of persons, or a restricted group." Ballentine's Law Dictionary. If the majority were to apply the common ordinary meanings of "open" and "public use," the result would have been that the Midas parking lot was covered by the DUI statute. It is clear that the parking lot falls within the scope of the statute because its users were unorganized and members of the public at large.

In addition to looking at the dictionary definition for the commonly understood meanings, courts may also look at the common understanding as expressed in case law. *Ziperstein* v. *Tax Commissioner,* 178 Conn. 493, 500, 423 A.2d 129 (1979). The majority relies on *Oxford* v. *Beacon Falls,* 183 Conn. 345, 347, 439 A.2d 348 (1981), wherein our Supreme Court premised its holding on *Laurel Beach Association* v. *Milford,* 148 Conn. 233, 235–36, 169 A.2d 748 (1961). *Laurel Beach* held (p. 336): "The general test of public use is the right of the public to receive and enjoy the benefit of the use." The majority fails to apply this rationale to this case. Applying the above test to the facts presented clearly demonstrates that the Midas parking lot is open to public use. The Midas lot implicitly permits and encourages members of the general public to enter, to park their cars, and to engage in business with Midas. In that way, the public is invited to enjoy the benefit of the parking lot.

The majority asserts that the parking lot in this case is "logically" distinguishable from malls and other shopping center parking lots because the Midas lot is restricted to use by a discrete class. It is difficult, how-

ever, to understand the exact parameters of the discrete class to which the majority refers.

Moreover, there is nothing in the record that indicates that the restriction is ever enforced.[1] The result attained by the majority renders § 14-227a (a) inapplicable to parking lots owned by single businesses, a lone bar for example or a grocery store, but applicable in lots owned by two or more businesses. Such a result is clearly illogical.

Finally, courts are required to read the statute in light of its purpose. Clearly our statutory prohibition against DUI is intended to protect the public from drunken drivers. *Hickey* v. *Commissioner of Motor Vehicles,* 170 Conn. 136, 139, 365 A.2d 403 (1976) (legislature enacted motor vehicle statutes for protection of lives and property of citizens). When the plain language of § 14-227a is read in light of this purpose, the statute clearly applies to parking areas such as the Midas lot, where members of the general public and their vehicles are vulnerable to the danger of drunken drivers.

The plain language of § 14-227a demonstrates the legislature's intent to curb drinking and driving, as well as to protect members of the public, who are the potential victims. In 1971, the legislature reached out to protect the public by having parking lots which hold ten or more cars fall within the scope of § 14-227a, regard-

---

[1] Although the majority states that "the defendant presented uncontradicted evidence that the lot was closed to the general public," the record indicates only that Midas, like many single commercial establishments, had posted signs which stated that the lot was for customers and employees only. There was no evidence that cars were ever ticketed or towed from the area.

Various methods restricting the use of a parking lot to employees can be used which would clearly demonstrate that the lot is not "open to public use," e.g., a card-activated gate or parking stickers. Such situations would be distinguishable from the parking lot in this case because the lot for "employees only" would not be one into which access by the general public is invited or permitted.

less of whether the area is publicly or privately owned. The statutory language must be construed to effectuate this purpose. *Frazier* v. *Manson,* 176 Conn. 638, 642, 410 A.2d 475 (1979); *Breen* v. *Department of Liquor Control,* 2 Conn. App. 628, 481 A.2d 755 (1984). The majority's view that the Midas parking lot does not fall within the scope of § 14-227a frustrates this legislative purpose.

The legislative history of the statute is helpful in construing the statute. *State* v. *West,* 192 Conn. 488, 494, 472 A.2d 775 (1984); *State* v. *Giorgio,* 2 Conn. App. 204, 209, 477 A.2d 134 (1984). In 1971, the legislature passed House Bill Number 9096, which redefined the scope of General Statutes § 14-227a (1) by reducing the blood alcohol content level above which a person is considered under the influence, (2) by prohibiting DUI in parking lots for ten or more cars, and (3) by raising the minimum fine for first offenders. Statutory construction involves examination of the circumstances surrounding the enactment of the statute. *Peck* v. *Jacquemin,* 196 Conn. 53, 64, 491 A.2d 1043 (1985); *Dukes* v. *Durante,* 192 Conn. 207, 214–15, 471 A.2d 1368 (1984). Identifying the societal problems which the legislature sought to address may be particularly helpful in determining the true meaning of the statute. *State* v. *Campbell,* 180 Conn. 557, 562, 429 A.2d 960 (1980). It is clear that the societal problem the legislature sought to address in General Statutes § 14-227a was public safety in light of the dangers presented by drunken drivers. In carrying out this legislative intent, it is clear that General Statutes § 14-227a was intended to include a parking lot similar to the one in this case.

In addition to examining the societal problem which the legislature sought to address, it is illuminating to examine statements made by members of the legislature in regard to the particular bill. The majority, in footnote 3, quotes a passage by Representative John

A. Carrozzella. I am unable, however, to come to a conclusion similar to that of the majority after reading it. "Now you know and I know that on such a parking lot, in the shopping centers certainly, a drunken driver is as big a menace if not more in that area than on the public highway." (Majority opinion, footnote 3, supra, quoting 14 H.R. Proc., Pt. 5, 1971 Sess., p. 2365.) The reference to shopping centers appears to be only an example, of "such a parking lot," rather than a description of the only kind of lot covered by the statute.

On the basis of these reasons, I respectfully dissent.