# STATE OF CONNECTICUT *v.* ROLAND BOUCHER
## (13261)

PETERS, C. J., HEALEY, CALLAHAN, GLASS and COVELLO, Js.

Argued March 8—decision released May 31, 1988

*Judith Rossi,* deputy assistant state's attorney, with whom, on the brief, was *James G. Clark,* assistant state's attorney, for the appellant (state).

*James J. Sullivan,* for the appellee (defendant).

CALLAHAN, J., The defendant was charged in an information with operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a). The charge resulted from the defendant's arrest at 12:06 a.m. on January 16, 1986, while seated in a pickup truck that had its motor running in the parking lot of a Midas Muffler (Midas) shop in the town of Manchester. Prior to trial, the defendant moved to dismiss the information against him. For the purpose of his motion, the defendant stipulated that he was operating a motor vehicle while intoxicated in the Midas parking lot at 285 Main Street in Manchester and that the parking lot was a parking area "for ten or more cars," a necessary element of § 14-227a (a).[1] For the purpose of the defendant's motion, the state conceded that the use of the parking lot was restricted to Midas customers.

---

[1] General Statutes § 14-227a (a) provides in pertinent part: "OPERATION WHILE UNDER THE INFLUENCE OF LIQUOR OR DRUG OR WHILE IMPAIRED BY LIQUOR. (a) Operation while under the influence. No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or on any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14-218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both or (2) while the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol, by weight."

In support of his motion to dismiss, the defendant argued that he could not be convicted of a violation of § 14-227a (a) because the parking area in which he was arrested was limited to use by Midas customers and was, therefore, not "open to public use" as required by the definition of "parking area" in General Statutes § 14-212 (5),[2] which definition is applicable to § 14-227a (a). He claimed, consequently, that the Midas parking lot was not a parking area in which operating a motor vehicle while under the influence of intoxicating liquor was prohibited by § 14-227a (a). The trial court agreed with the defendant's reasoning and dismissed the information against him with prejudice.

The state subsequently sought and obtained permission to appeal the decision of the trial court to the Appellate Court. A divided Appellate Court affirmed the trial court's decision. *State* v. *Boucher,* 11 Conn. App. 644, 528 A.2d 1165 (1987) (*Daly, J.,* dissenting). A majority of the Appellate Court concluded that, because the use of the Midas parking area was restricted to Midas customers and employees, it was not "open to public use" and was, therefore, not a parking area that came within the purview of § 14-227a.[3]

---

[2] General Statutes § 14-212 (5) provides: "DEFINITIONS. Terms used in this chapter shall be construed as follows, unless another construction is clearly apparent from the language or context in which the term is used or unless the construction is inconsistent with the manifest intention of the general assembly . . . .

"(5) 'Parking area' means lots, areas or other accomodations for the parking of motor vehicles off the street or highway and open to public use with *or without charge.*"

[3] In its opinion the Appellate Court stated: "At trial, the defendant presented evidence that the lot was used exclusively by Midas employees and customers and that large signs inform the public that noncustomers who park on the lot are subject to being towed at the owners' expense." *State* v. *Boucher,* 11 Conn. App. 644, 646, 528 A.2d 1165 (1987). A thorough review of the transcript of the hearing on the defendant's motion to dismiss, which was the only relevant trial court proceeding in this matter, reveals that no evidence was taken, and that there was no mention of either the use of the parking lot by employees or of the existence of signs. The Appellate

On the state's petition, we granted certification limited to the question: "Did the Appellate Court erroneously preclude the applicability of General Statutes §§ 14-227a and 14-212 (5) to the operator of a motor vehicle in the parking area of a business establishment to which the general public was invited?" We conclude that the majority of the Appellate Court took too restrictive a view of the phrase "open to public use," and we reverse.

For an area to be "open to public use" it does not have to be open to "everybody all the time." *State ex rel. Anderson* v. *Witthaus,* 340 Mo. 1004, 1011, 102 S.W.2d 99 (1937); see also *Peachtree on Peachtree Inn, Inc.* v. *Camp,* 120 Ga. App. 403, 410, 170 S.E.2d 709 (1969); *Commissioner* v. *Baughman,* 357 Pa. Super. 535, 538, 516 A.2d 390 (1986), appeal denied, 515 Pa. 572, 527 A.2d 534 (1987). The essential feature of a public use is that it is not confined to privileged individuals or groups whose fitness or eligibility is gauged by some predetermined criteria, but is open to the indefinite public. It is the indefiniteness or unrestricted quality of potential users that gives a use its public character. See *Columbia Pictures Industries, Inc.* v. *Aveco, Inc.,* 800 F.2d 59, 63 (3d Cir. 1986); *Thayer* v. *California Development Co.,* 164 Cal. 117, 127, 128 P. 21 (1912); *State ex rel. Anderson* v. *Witthaus,* supra; *People* v. *Sherman,* 158 N.Y.S.2d 835, 837 (Mag. Ct. 1957); *State* v. *Mulder,* 290 Or. 899, 903–904, 629 P.2d 816 (1981); *Frawley Ranches, Inc.* v. *Lasher,* 270 N.W.2d 366, 369 (S.D. 1978); 1 R. Erwin, Defense of Drunk Driving Cases (3d Ed.) § 1.03 [5] [c].

It is common knowledge that Midas spends a great deal of money on advertising to induce the public to

Court apparently obtained this information from the defendant's Appellate Court brief. We do not think, however, that those "facts" apparently considered by the Appellate Court are essential to a determination of this matter.

avail itself of its products and services and to patron-ize its various Midas shops. See *Fidelity & Casualty Co.* v. *Constitution National Bank,* 167 Conn. 478, 491, 356 A.2d 117 (1975); *Mayock* v. *Martin,* 157 Conn. 56, 63, 245 A.2d 574 (1968), cert. denied, 393 U.S. 1111, 89 S. Ct. 924, 21 L. Ed. 2d 808 (1969). Midas, in turn, makes its products and services available to any mem-ber of the public inclined to bring his or her automo-bile to Midas for repairs. There is no known criterion for the use of a Midas parking lot except being a Midas customer. Further, there is no known criterion for being a potential Midas customer except perhaps a noisy muffler and a knowledge that "nobody beats Midas, nobody." In short, Midas invites the general public to make use of its services and Midas' services are available to any member of the general public dis-posed to procure them.

Midas' invitation to the public, its availability to the public and its creation of parking lots for the use of the public while doing business with Midas add up to a parking area at the Manchester Midas Muffler shop that is "open to public use" as that term is used in § 14-212 (5). A place is "public" to which the public is invited either expressly or by implication to come for the purpose of trading or transacting business. *State* v. *Baysinger,* 272 Ind. 236, 240–41, 397 N.E.2d 580 (1979), appeal dismissed sub nom. *Dove* v. *State,* 449 U.S. 806, 101 S. Ct. 52, 66 L. Ed. 2d 10 (1980); *Peachey* v. *Boswell,* 240 Ind. 604, 622, 167 N.E.2d 48 (1960). "[A]ny parking lot . . . which the general public has access to, is a public parking lot." *Houston* v. *State,* 615 P.2d 305, 306 (Okla. Crim. App. 1980); see also *Columbia Pictures Industries, Inc.* v. *Aveco, Inc.,* supra, 63; *People* v. *Sherman,* supra, 837. "The terms 'open to the public' and to which 'the public has access' [in drunk driving statutes] are usually held to be broad enough to cover parking lots of restaurants, shopping centers, and *other areas where the public is invited*

*to enter and conduct business."* (Emphasis added.)
1 R. Erwin, supra, § 1.03 [5] [c].[4]

The defendant in his brief and the Appellate Court in its opinion, although denying the applicability of § 14-227a (a) to the Midas parking area in question, acknowledged its applicability to private parking areas "at shopping centers where the user is encouraged to patronize a number of stores." *State* v. *Boucher,* supra, 647. The legislature, however, made no distinction between parking areas based on the number of appurtenant stores. The only requisites that the legislature imposed for the application of § 14-227a (a) to parking areas were that the parking area be "for ten or more cars" and that it be "open for public use." General Statutes § 14-212 (5). The Appellate Court by its construction of §§ 14-227a (a) and § 14-212 (5) has erroneously engrafted an exception to the legislative response to the threat posed to the public by intoxicated drivers merely because it perceived good reason for doing so. *State* v. *Baker,* 195 Conn. 598, 602, 489 A.2d 1041 (1985); *Houston* v. *Warden,* 169 Conn. 247, 251, 363 A.2d 121 (1975); *State ex rel. Heimov* v. *Thomson,* 131 Conn. 8, 12, 37 A.2d 689 (1944); *State* v. *Frank,* 2 Ohio App. 3d 392, 395, 442 N.E.2d 469 (1981).

It would not be in keeping with the legislative intent and the purpose of statutes prohibiting driving while under the influence of intoxicating liquor to create a distinction as to the applicability of § 14-227a (a) grounded on the number of stores served by a particular parking area. See *State* v. *Sisti,* 62 N.J. Super. 84,

---

[4] The defendant in his brief maintains that the Midas parking lot is not open to the public because it is only open to Midas customers, "a limited group of individuals possessing a unique status." If the defendant's reasoning were followed to its logical conclusion, General Statutes § 14-227a (a) would not apply to the parking areas of any privately owned business establishments. This is clearly not the legislative intent. 14 H.R. Proc., Pt. 5, 1971 Sess., pp. 2363–66.

87, 162 A.2d 297 (1960); *Houston* v. *State,* supra, 306. Pedestrians, occupants of other automobiles, and property are just as vulnerable to an intoxicated driver in a parking area for one store as they would be in a parking area for two, three, or more stores. See *People* v. *Guynn ,* 33 Ill. App. 3d 736, 739, 338 N.E.2d 239 (1975); *State* v. *Carroll,* 225 Minn. 384, 386–87, 31 N.W.2d 44 (1948); *State* v. *Magner,* 151 N.J. Super. 451, 454, 376 A.2d 1333 (1977); *People* v. *Taylor,* 202 Misc. 265, 267, 111 N.Y.S.2d 703 (1952). The legislature enacted the statutes governing the operation of motor vehicles for the protection of all of the citizens of this state; *Shore* v. *Stonington,* 187 Conn. 147, 162, 444 A.2d 1379 (1982) (*Peters, J.,* dissenting); *Hickey* v. *Commissioner of Motor Vehicles,* 170 Conn. 136, 139, 365 A.2d 403 (1976); see also *Conner* v. *State,* 696 P.2d 680, 683 (Alaska App. 1985); *State* v. *Bromley,* 117 Vt. 228, 230, 88 A.2d 833 (1952); not just those who patronize large shopping centers. The offense of driving under the influence of intoxicating liquor is particularly dangerous; *Hickey* v. *Commissioner of Motor Vehicles,* supra, 140; *State* v. *Gillespie,* 100 N.J. Super. 71, 75, 241 A.2d 239 (1968); *State* v. *Drews,* 23 Ohio Misc. 370, 372, 261 N.E.2d 357 (1970); *State* v. *Day,* 27 Wash. App. 854, 857, 620 P.2d 1023 (1980), rev'd on other grounds, 96 Wash. 2d 646, 638 P.2d 546 (1981); and the legislatures and the courts have emphasized the need to protect the public from drunk drivers whether on streets or highways or other public or private property. *Cook* v. *State,* 220 Ga. 463, 464–65, 139 S.E.2d 383 (1964); *Huey* v. *State,* 503 N.E.2d 623, 626 (Ind. App. 1987); *State* v. *Carter,* 424 N.E.2d 158, 160 (Ind. App. 1981); *Schafer* v. *Commissioner of Public Safety,* 348 N.W.2d 365, 368 (Minn. App. 1984); *State* v. *Frank,* supra, 393; 14 H.R. Proc., Pt. 5, 1971 Sess., pp. 2363–66; 1 D. Nichols, Drinking and Driving Litigation § 2.08.

We conclude, therefore, that the legislature, in enacting §§ 14-227a and 14-212 (5), intended to extend the

prohibition against operating a motor vehicle while under the influence of intoxicating liquor to any parking area for ten or more cars to which that indefinite group labeled "the public" is invited or permitted to use. That conclusion requires that we reverse the Appellate Court and direct it to remand to the trial court with direction to reinstate the information charging the defendant with a violation of § 14-227a (a).

There is error, the judgment of the Appellate Court is reversed and the case is remanded to that court with direction to remand the case to the trial court with direction to reinstate the information charging the defendant with a violation of § 14-227a (a).

In this opinion the other justices concurred.