[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff Thomas Storrs appeals the decision of the defendant commissioner of motor vehicles suspending the plaintiff's motor vehicle operator's license for six months. The commissioner acted pursuant to General Statutes § 14-227b on the basis that the plaintiff refused to submit to a chemical test of the alcohol content of his blood after having been arrested on a charge of driving while under the influence of alcohol or drugs. The plaintiff appeals pursuant to General Statutes §4-183.
 FACTUAL BACKGROUND
The record reflects the following facts. On June 1, 1997, at approximately 2 a.m., Officer Jonas of the Vernon Police Department went to investigate a complaint regarding a highly intoxicated male and female knocking on doors in the South Village Condominium complex at 165 South Street, Vernon. The complaint reported that these two people had a white car, which was parked in the middle of the parking lot driveway near apartment thirty-four. When he arrived at the condominium complex, the police officer saw the vehicle running in the parking lot with two individuals inside. The plaintiff, the operator of the vehicle, started to move the car and the police officer stopped the vehicle. As the police officer began to walk to the vehicle, the plaintiff began to drive away. The police officer ordered the plaintiff to stop. The plaintiff appeared to be in a state of confusion. The police officer smelled an odor of alcoholic beverages coming from inside the car. The officer saw approximately twelve to fifteen empty beer bottles in the car. The plaintiff said he had drank "about a six-pack." The police officer asked the plaintiff if he had been knocking on doors and the plaintiff said yes he was looking for a friend, but did not remember what condominium it was. The plaintiff staggered and had a great deal of difficulty maintaining his balance. The plaintiff slurred his words and said he thought he was in Storrs. The CT Page 7034 police officer smelled the odor of alcoholic beverages on the plaintiff. The police officer had the plaintiff perform some field sobriety tests, which the plaintiff failed. Based on his observations, the police officer arrested the plaintiff for operating a motor vehicle while under the influence of alcohol and/or drugs. (Return of Record ["ROR"], Item 5, Police Report of Officer Jonas.) The plaintiff told the police officer he drank the six beers in South Windham. (ROR, Item 5 "A-44 Form," p. 2)
At police headquarters, the plaintiff was advised of hisMiranda rights and given the opportunity to telephone an attorney, which he declined. The police officer read the implied consent advisory to the plaintiff and asked the plaintiff to submit to a breath test. The plaintiff refused to submit to the test. (ROR, Item 5, p. 3)
On June 6, 1997, the department of motor vehicles notified the plaintiff that his operator's license was under suspension for six months beginning July 1, 1997, for refusal to take a chemical alcohol test. (ROR, Item 2.) The plaintiff requested a hearing which was held on June 24, 1997 before Barry Goodberg, a hearing officer. (ROR, Item 4.) The plaintiff appeared and was represented by counsel. (ROR, Item 4.) The hearing officer entered the plaintiff's temporary license, the A-44 form, the intoxilyzer tape and the arrest report with a three-page attachment into evidence. (ROR, Item 4, p. 4.)
On June 24, 1997, the hearing officer made his decision to suspend the plaintiff's operating license for six months based on his finding that (1) the police officer had probable cause to arrest the plaintiff for a violation specified in General Statutes § 14-227b (b); (2) the plaintiff was placed under arrest; (3) the plaintiff refused to submit the test; and (4) the plaintiff was operating the motor vehicle. The hearing officer made a subordinate finding that "there is sufficient evidence of operation, as the [plaintiff] was observed operating this vehicle in a parking lot with a capacity of more than ten (10) cars." (ROR, Item # 6.)
The plaintiff filed a petition for reconsideration on July 1, 1997, which was denied on July 15, 1997. (ROR, Item # 8.)
This appeal and a motion for stay of suspension and reinstatement of license was served on the defendant on July 15, 1997, by certified mail. (Certification.) The defendant appeared CT Page 7035 on August 4, 1997. On September 2, 1997, the court granted the motion for stay of suspension and reinstatement of license. The answer and record were filed on September 3, 1997. The plaintiff's brief was filed on September 22, 1997 and the defendant's on November 21, 1997. The court heard argument on March 9, 1998.
The plaintiff challenges the hearing officer's decision on the ground that the arrest of the plaintiff was without probable cause as the plaintiff was not operating a motor vehicle in violation of General Statutes §§ 14-227a and 14-212 (6), because the condominium complex parking lot was not open to public use.
The defendant counters that the hearing officer's decision should be upheld because (1) it was not unreasonable to find that the condominium complex parking lot was a public parking lot and (2) the hearing officer could have made a reasonable inference that the plaintiff, who admitted he drank a six-pack of beer and admitted he drove to the condominium complex from South Windham, drove while intoxicated on a public highway.
 DISCUSSION
A. Judicial Review
"Judicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Citations omitted; internal quotation marks omitted.)Schallenkamp v. Delponte, 229 Conn. 31, 40, 639 A.2d 1018 (1994). The plaintiff has the burden of proving that the commissioner's decision to suspend his operating privilege is "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record. General Statutes 4-183 (j)(5). . . ." (Internal quotation marks omitted.) Id., 39. "Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) Kireiv. Hadley, 47 Conn. App. 451, 454, 705 A.2d 205 (1998). The court may not "retry the case or substitute its judgment for that of CT Page 7036 the commissioner." Id.
B. Parking Lot Open to the Public
The plaintiff claims that the private parking lot of the condominium complex is not a parking area in which operating a motor vehicle under the influence of alcohol is prohibited by General Statutes § 14-227a (a). That statutory provision states in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or . . . in any parking area for ten or more cars . . . ." (Emphasis added.) General Statutes § 14-227a
(a). General Statutes § 14-212 (6) defines parking area as "lots, areas or other accommodations for the parking of motor vehicles off the street or highway and open to public use with or without charge." The Connecticut Supreme Court has held that "the legislature, in enacting §§ 14-227a and 14-212 ([6]), intended to extend the prohibition against operating a motor vehicle while under the influence of intoxicating liquor to any parking area for ten or more cars to which that indefinite group labeled `the public' is invited or permitted to use." State v.Boucher, 207 Conn. 612, 618-19, 541 A.2d 865 (1988). In ruling
that the parking lot for a Midas Muffler repair shop was open to the public, the court said, "[t]he essential feature of a public use is that it is not confined to privileged individuals or groups whose fitness or eligibility is gauged by some predetermined criteria, but is open to the indefinite public. It is the indefiniteness or unrestricted quality of potential users that gives a use its public character. . . ." Id., 615. "Midas' invitation to the public, its availability to the public and its creation of parking lots for the use of the public while doing business with Midas add up to a parking area . . . that is open to public use as that term is used in 14-215 ([6])." Id., 616. In the present matter, there is no evidence in the record to support a finding that the condominium complex parking lot is open to the indefinite public. "The fact that common areas of a condominium complex are open to the various condominium owners does not establish that they are, as a matter of law, open to the public. In situations in which the premises have been considered open to the public, there is generally some sort of public function or traditional business purpose being served. Public or business CT Page 7037 functions are conspicuously absent in a private residence such as a condominium building." Morin v. Bell Court Condominium Assn.,Inc., 223 Conn. 323, 335, 612 A.2d 1197 (1992). In fact, unlike the Midas shop which was inviting to the public, the condominium association has a policy of prohibiting solicitors. (ROR, Item # 8, Exhibit A.)
The court finds that there was no evidence in the record before the hearing officer to support a finding that the condominium complex parking lot was open to the public as that term is used in General Statutes § 14-215 (6).
C. Probable Cause of Operation on a Public Highway
The defendant argues that it was reasonable for the hearing officer to infer from the record that the plaintiff had operated a motor vehicle on a public highway while intoxicated and, therefore, make a finding that the police officer had probable cause to arrest the plaintiff. At the hearing, the plaintiff noted that the police officer had not checked the "operation on public road" box on the A-44 form.
"Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . In determining whether there was probable cause to arrest for operating a motor vehicle while under the influence of liquor, the court may consider, just as in an arrest for any other criminal offense, circumstantial as well as direct evidence." (Citation omitted; internal quotation marks omitted.) Kirei v. Hadley, supra, 47 Conn. App. 456. "To establish probable cause, it is not necessary to produce a quantum of evidence necessary to convict." (Internal quotation marks omitted.) Id.
In Kirei v. Hadley, supra, 47 Conn. App. 453, the record showed the plaintiff was arrested for operating a motor vehicle under the influence of alcohol. The officer had observed a vehicle in a snowbank, its inside compartment warm, the transmission in drive and the plaintiff, who was found to be intoxicated, walking two-tenths of a mile from the vehicle towards his home. Id. The hearing officer suspended the plaintiff's license. The Appellate Court upheld the decision, stating, "the totality of the circumstances existing at the time of the plaintiff's arrest support the hearing officer's finding CT Page 7038 that there was probable cause to arrest the plaintiff for operating a motor vehicle while under the influence of liquor." Id., 457.
In the present matter, the record before the hearing officer consisted of the police report containing an admission by the plaintiff that he consumed six beers in South Windham, the police officer's view of twelve to eighteen empty beer bottles in the car, the plaintiff's statement that he thought he was in Storrs and the plaintiff's inability to find an apartment in the condominium complex where he knew someone. The record also consisted of the plaintiff's operation of the motor vehicle in the condominium complex at the time of the police officer's arrival, the plaintiff's failure of the field sobriety tests and the police officer's determination that the plaintiff was intoxicated. The totality of the circumstances existing at the time of the plaintiff's arrest support the hearing officer's finding that the police officer had probable cause to arrest the plaintiff for operating a motor vehicle while intoxicated.
The record before the hearing officer contained the A-44 form without an indication that the plaintiff operated on a public road. (ROR, Item # 5, p. 1.) "The fallacy in the plaintiff's argument is that the defendant was not required to present absolute proof that the plaintiff was operating on a public highway." Schuh v. Commissioner of Motor Vehicles,48 Conn. App. 547, 551, ___ A.2d ___ (1998). In an administrative action involving a license revocation under General Statutes §14-227b, "the hearing officer's decision to revoke a drivers license is not subject to the `far higher' burden of proof that is required for a criminal conviction of driving under the influence."O'Rourke v. Commissioner of Motor Vehicles, 33 Conn. App. 501,508, 636 A.2d 409, cert. denied, 229 Conn. 909,642 A.2d 1205 (1994). The police officer's failure to check the box indicating the plaintiff had driven on a public road does not nullify other information in the police report indicating the plaintiff had done so. Bialowas v. Commissioner of Motor Vehicles,44 Conn. App. 702, 712, 692 A.2d 834 (1997).
The court finds substantial evidence exists to support the inference that the plaintiff was intoxicated, the plaintiff did not get intoxicated at the condominium complex and the plaintiff operated the motor vehicle on a public highway while intoxicated to arrive at the condominium complex. CT Page 7039
Thus, the court dismisses the appeal.
Klaczak J.