784 P.2d 349

**STATE of Idaho, Plaintiff–Respondent,**

v.

**James C. ARMBRUSTER,
Defendant–Appellant.**

No. 17700.

Court of Appeals of Idaho.

Dec. 11, 1989.

Bruce H. Greene, Sandpoint, for defendant-appellant.

Jim Jones, Atty. Gen., Jack B. Haycock, Deputy Atty. Gen. (argued), for plaintiff-respondent.

SWANSTROM, Judge.

James Armbruster entered a conditional plea of guilty to the misdemeanor offense of driving under the influence of alcohol. I.C. § 18–8004. By entry of this conditional plea, Armbruster reserved the right to appeal the magistrate's order denying the suppression of the blood-alcohol tests. We are asked to decide whether probable cause existed to arrest Armbruster and to request that he take a blood-alcohol test. After considering the issue, we affirm the district court's decision upholding the magistrate's order denying suppression of the test results.

On appeal, our review of probable cause determinations is bifurcated. We defer to the lower court's findings of fact when supported by substantial evidence. However, we exercise de novo review over the question whether the facts as found constitute probable cause. *State v. Middleton*, 114 Idaho 377, 757 P.2d 240 (Ct. App.1988). "Reasonable or probable cause has been defined as information that 'would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that such person is guilty.'" *State v. Alger*, 100 Idaho 675, 677, 603 P.2d 1009, 1011 (1979).

The essential facts, as found by the magistrate, are as follows. James Armbruster was driving at night on Highway 95 when he was stopped by an Idaho State Police Officer for crossing the fog line twice and driving with a tail light out. When the officer approached Armbruster's car, Armbruster rolled down his window and handed out his driver's license. The officer testified that there was a strong odor of alcohol on Armbruster's breath, his eyes were bloodshot and glazed, and his speech was slightly slurred. In addition, Armbruster admitted to drinking three beers that evening. The officer then ordered Armbruster out of his car to evaluate Armbruster's performance on field sobriety tests. Armbruster initially refused but then agreed to do the tests. The magistrate found that he performed the tests only "after being coerced by the officer's threat to arrest him if he refused to do

them." Armbruster failed the tests and the officer subsequently placed him under arrest. Upon arrival at the police station, Armbruster was requested to take an "Intoximeter 3000" test to determine his blood-alcohol concentration. The test disclosed alcohol concentrations of .17 and .16 percent.

Neither party disputes that the officer had sufficient grounds to stop Armbruster's car. As noted, Armbruster crossed the fog line twice and drove with a tail light out. I.C. §§ 49–902(1) and 49–906(1); *Matter of Nowoj*, 115 Idaho 34, 764 P.2d 111 (Ct.App.1988) (review denied). However, Armbruster claims that the results of the subsequent blood-alcohol test should be excluded because the tests represent the "fruits" of an illegal search and seizure which occurred when the field sobriety tests were coercively administered to Armbruster by the officer. Armbruster further contends that without the field sobriety tests, the officer's observations were insufficient to constitute probable cause. In contrast, the state argues that the results of the field sobriety tests together with the officer's observations constituted probable cause to arrest Armbruster and to request that he take the blood-alcohol test. The state also asserts that even if the field sobriety tests were excluded, the officer's observations prior to those tests yielded sufficient information to establish probable cause for the arrest and the request to take the blood-alcohol test. Because we find probable cause existed without the observations derived from the field sobriety tests, we need not decide whether those tests constituted an illegal search and seizure.

Armbruster claims that prior to the field sobriety tests, the officer's observations were only enough to put a person of ordinary prudence on notice that additional evidence was needed to constitute probable cause. Armbruster supports this position by noting that the officer testified the reason he had Armbruster perform the field sobriety tests was so that he could evaluate Armbruster's ability to operate a motor vehicle. Armbruster argues that this statement shows the officer thought that there simply was not enough evidence

available until after the field tests to allow the officer to form a reasonable belief that Armbruster was under the influence of alcohol. However, as this Court stated in *State v. Middleton*, 114 Idaho 377, 757 P.2d 240 (Ct.App.1988), the officer's belief is not controlling. "The presence or absence of probable cause is determined by a court upon the objective evidence in the case, not upon an officer's subjective impression." 114 Idaho at 381, 757 P.2d at 244.

Here, as we have mentioned, the officer testified Armbruster's eyes were glazed and bloodshot, his speech was slightly slurred and his breath smelled of alcohol. The officer also noted that Armbruster crossed the fog line twice and he admitted to having had three beers to drink. We hold that these facts established probable cause to arrest Armbruster and to request that he submit to a blood-alcohol test. *Matter of Nowoj, supra; State v. Foster*, 95 Or.App. 144, 768 P.2d 416 (1989). *See also State v. Curtis*, 106 Idaho 483, 680 P.2d 1383 (Ct.App.1984) (probable cause existed when the officer observed full and empty beer cans in the defendant's car and smelled a strong odor of alcohol on the defendant's breath); *State v. Middleton, supra,* (probable cause existed when the defendant was unsteady on his feet, smelled of alcohol and admitted to having consumed alcohol).

Accordingly, we affirm the decision of the district court upholding the magistrate's order on the motion to suppress.

BURNETT, J., and HART, J., Pro Tem., concur.