171 P.3d 259

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Dylan Werner SCHMITT, Defendant–Appellant.**

No. 32641.

Court of Appeals of Idaho.

July 11, 2007.

Review Denied Nov. 27, 2007.

Molly J. Huskey, State Appellate Public Defender; Heather M. Carlson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Lori A. Fleming, Deputy Attorney General, Boise, for respondent.

PERRY, Chief Judge.

Dylan Werner Schmitt appeals from his judgment of conviction for possession of methamphetamine with intent to deliver. Specifically, Schmitt challenges the district court's denial of his motion to suppress. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

At approximately 1:00 a.m. a police officer observed the front entrance, a sliding glass door, of a moving and storage warehouse being pulled shut by someone inside. The officer became suspicious as he had never known anyone to work or enter the warehouse during nonbusiness hours. Additionally, other businesses in the area had a history of burglaries. The officer observed that a car was parked by the front entrance in the warehouse's parking lot and that no lights or signs of activity could be seen through the building's windows. The officer called for backup and, within a few minutes, another officer arrived at the scene.

The officers approached the front entrance and determined the door was locked. The officers then positioned themselves so as to observe the front entrance and waited. During that time, one of the officers heard someone manipulate the sliding glass door, but there was no other sign of activity inside the building. Nearly an hour later, the officers saw a light turn on inside the building, only to abruptly switch off. Shortly thereafter, three individuals exited the warehouse, one of which was Schmitt. With one hand, Schmitt was pulling a rolling suitcase that had a smaller bag on top of it. Schmitt was holding an open container of beer in his other hand.

The officers drew their weapons and ordered Schmitt and his companions to lie on the ground. All three complied. One of the officers then informed Schmitt he was under arrest for a violation of a city of Idaho Falls open container ordinance. The officers radioed for additional assistance. When backup officers arrived at the scene, Schmitt and the two other suspects, who had remained facedown on the ground, were handcuffed and made to stand up. An officer began to perform a frisk of Schmitt for weapons. During the frisk, the officer noticed that Schmitt was unable to speak clearly in response to questions being asked of him. The officer looked closely at Schmitt's face and saw a plastic bag in Schmitt's mouth. Based upon his experience, the officer suspected it was illegal drugs. The officer became concerned that, if Schmitt swallowed a bag containing illegal drugs, it would both destroy evidence and put Schmitt at great risk for a harmful, or potentially fatal, overdose.

The officer ordered Schmitt to spit the bag out. When Schmitt refused to comply, the officer attempted to force the bag out. At this point, Schmitt broke free and ran. After a short chase, the officers apprehended Schmitt and eventually forced the bag out of his mouth with the use of a pen. The bag contained a large amount of methamphetamine. The officers also searched the luggage Schmitt had in his possession when he left the warehouse and recovered a handgun.

The state initially charged Schmitt with trafficking methamphetamine and unlawful possession of a firearm. Schmitt moved to suppress the methamphetamine and handgun evidence as being the result of an unlawful detention and unreasonable search. The district court denied the motion on the grounds that reasonable suspicion existed to conduct an investigative detention of Schmitt and that the methods used to detain him were not intrusive enough to constitute a *de facto* arrest. The district court went on to determine that the warrantless search of his

mouth was acceptable given the exigent circumstance of possible destruction of evidence and potential harm to Schmitt. Finally, in the alternative, the district court also concluded that the officers had probable cause to arrest Schmitt for the open container violation and any subsequent search of his person was a constitutionally reasonable search incident to arrest.

Schmitt entered a conditional guilty plea to an amended charge of possession of methamphetamine with intent to deliver. I.C. § 37-2732(A)(4)(a). Pursuant to the plea agreement, the state dismissed the remaining charges and Schmitt reserved the right to appeal the denial of his suppression motion. The district court imposed a unified term of seven years, with a minimum period of confinement of two years. Schmitt appeals.

## II.

### ANALYSIS

On appeal, Schmitt asserts the district court erred in denying his motion to suppress evidence. Schmitt argues that the district court erred in concluding the officer had probable cause to arrest him for violating the Idaho Falls open container ordinance. Schmitt also argues there was no probable cause to arrest him for burglary and, even if the officer had reasonable suspicion, the officer's investigative detention was so intrusive that it was a *de facto* arrest. Consequently, Schmitt reasons that any evidence seized during his illegal arrest should have been excluded.

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact which are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct.App.1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez–Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995);

*State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct.App.1999).

A police officer may engage in a warrantless arrest of a suspect when he or she has committed, or attempted to commit, a public offense, including misdemeanor offenses, in the officer's presence. I.C. § 19–603; *State v. Bowman*, 124 Idaho 936, 940, 866 P.2d 193, 197 (Ct.App.1994). It is a misdemeanor within the city of Idaho Falls to possess an open container of beer outside of several different types of locations specified in the ordinance. Idaho Falls City Ordinance § 4-3-17. Schmitt argues that the district court erred in concluding he was not in a "private parking lot" which, under the provisions of the relevant ordinance, is one of the locations where possession of an open container of beer is permitted. Idaho Falls City Ordinance § 4-3-17(B)(1).

■ This Court exercises free review over the application and construction of statutes. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct.App.2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999); *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct.App.2000). The language of the statute is to be given its plain, obvious, and rational meaning. *Burnight*, 132 Idaho at 659, 978 P.2d at 219. If the language is clear and unambiguous, there is no occasion for the court to resort to legislative history or rules of statutory interpretation. *Escobar*, 134 Idaho at 389, 3 P.3d at 67. When this Court must engage in statutory construction, it has the duty to ascertain the legislative intent and give effect to that intent. *Rhode*, 133 Idaho at 462, 988 P.2d at 688. To ascertain the intent of the legislature, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute, and its legislative history. *Id.* It is incumbent upon a court to give a statute an interpretation, which will not render it a nullity. *State v. Beard*, 135 Idaho 641, 646, 22 P.3d 116, 121 (Ct.App.2001). Construc-

tions of a statute that would lead to an absurd result are disfavored. *State v. Doe,* 140 Idaho 271, 275, 92 P.3d 521, 525 (2004); *State v. Yager,* 139 Idaho 680, 690, 85 P.3d 656, 666 (2004).

Idaho Falls City Ordinance § 4-3-17 provides, in pertinent part:

(A) Any person who is in possession of an open container of beer within the City of Idaho Falls shall be guilty of a misdemeanor.

(B) Notwithstanding the foregoing, nothing herein shall prohibit the possession of an open container of beer within the following areas:

(1) Within a fully enclosed, privately-owned building or upon a private parking lot adjacent or appurtenant to such building provided such parking lot is located more than two hundred (200) feet away from the premises of any licensed liquor vendor. Such distance shall be measured at the shortest distance between the exterior boundaries of such parking lot and licensed premises.

■ Schmitt argues that, because the parking lot adjacent to the warehouse was private, under Section 4-3-17(B)(1) he was not in violation of the ordinance when he was arrested by the officers for possessing an open container of beer. Schmitt contends the language of the ordinance is applicable to any privately-owned parking lot, regardless of its purpose or use. However, the plain language of the statute refers not to a parking lot that is privately-owned, but rather to a parking lot that is simply private. The term "private parking lot" is not defined by the ordinance.

In comparison, under the Idaho Code, it is a crime to drive a motor vehicle, while under the influence of alcohol (DUI), "whether upon a highway, street or bridge, or upon public or private property open to the public." I.C. § 18-8004(1)(a); *see also State v. Knott,* 132 Idaho 476, 480, 974 P.2d 1105, 1109 (1999). The term "private property open to the public," as applied to the Idaho DUI statute, is defined as any property not owned by the federal government, or the state of Idaho or any of its political subdivisions, but is available for vehicular traffic or parking by the general public with the permission of the owner. I.C. § 49-117(16); *Knott,* 132 Idaho at 480, 974 P.2d at 1109.

In *State v. Gibson,* 126 Idaho 256, 881 P.2d 551 (Ct.App.1994), *overruled on other grounds by Knott,* 132 Idaho at 480, 974 P.2d at 1109, the defendant was charged with violating the Idaho DUI statute for operating a motor vehicle under the influence of alcohol in the privately-owned parking lot of a local bar. On appeal, the defendant asserted that the bar parking lot was not open to the general public, as it was only available for use by the patrons of the bar and was, therefore, private property. The defendant argued the DUI statute did not prohibit operating a motor vehicle in a private parking lot.

In reviewing that case, we were persuaded by the Connecticut Supreme Court's interpretation that a "public" parking lot is any parking lot which the general public has access to. *Gibson,* 126 Idaho at 258, 881 P.2d at 553, *quoting State v. Boucher,* 207 Conn. 612, 541 A.2d 865, 867-68 (1988). We held that, for an area to be open to general public use, it was not necessary that the area be open to everybody all of the time. *Gibson,* 126 Idaho 256, 258, 881 P.2d 551, 553. Instead, a place is open to the public when the indefinite public, rather then a predetermined group of individuals, is invited, either expressly or by implication, to enter the property for any reason. *Id.* In affirming the defendant's judgment of conviction, we noted that the bar parking lot, while private property, was not restricted by physical barriers or had any posted signs controlling access. Rather, any member of the general public who wanted to patronize the bar could come onto the property.

The ordinance at issue in the instant appeal makes a clear distinction between a "privately-owned" building and a "private parking lot" indicating the word "private," for the purpose of the ordinance, is not intended to be synonymous with "privately-owned." The common, relevant, definition of the word "private" is "not freely available to the public." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1805 (1993). In short, as

we established in *Gibson*, what defines an area as private or public is not based solely upon the ownership status of the property, but rather who has been granted general access to the property by the owner. *See Gibson*, 126 Idaho 256, 258, 881 P.2d 551, 553. Furthermore, we note that another Idaho Falls City ordinance is specifically applicable to private property open to public use but does not indicate such enforcement would be applicable to private parking lots not open to the general public. See Idaho Falls City Ordinance § 9–4–23.

■ Therefore, under the plain meaning of the term, a private parking lot is one that is not open to the general public for any use and is therefore the opposite of a public parking lot. Accordingly, Idaho Falls City Ordinance § 4–3–17(B)(1) provides that it is a misdemeanor to possess an open container of beer in a privately-owned parking lot if the lot is open to the general public.[1]

There is no dispute that the warehouse Schmitt exited on the night he was arrested was a privately-owned building. However, evidence was presented to the district court that the parking lot appurtenant to the warehouse was not fenced in, had no signs indicating the parking lot was not open to the public, and was immediately accessible from the public sidewalk and street. Additionally, testimony was presented to the district court that, during the day, this parking lot was frequently full of vehicles and was the only apparent way to access the building's public, business entrance. In short, the evidence in the record indicates that the parking lot in front of the warehouse, while undoubtedly privately-owned property, was generally open to the public and therefore not a private parking lot under Idaho Falls City Ordinance § 4–3–17(B)(1).

Because Schmitt was in possession of an open container of beer in a parking lot generally open to the public, the officers had probable cause to arrest Schmitt for violating the city's open container ordinance. Consequently, the search of Schmitt's person was incident to his valid arrest and did not violate the Fourth Amendment proscription against unreasonable searches. *See Chimel v. California*, 395 U.S. 752, 762–63, 89 S.Ct. 2034, 2039–40, 23 L.Ed.2d 685, 693–94 (1969); *State v. Moore*, 129 Idaho 776, 781, 932 P.2d 899, 904 (Ct.App.1996). Because this issue is dispositive of the instant appeal, we need not consider the other issues raised by Schmitt.

## III

## CONCLUSION

The district court did not err in concluding the police officers had probable cause to arrest Schmitt for violating the Idaho Falls open container ordinance and that the subsequent search of his person was valid incident to his arrest. Therefore, the district court correctly denied Schmitt's motion to suppress evidence. Accordingly, we affirm Schmitt's judgment of conviction.

Judge LANSING and Judge GUTIERREZ Concur.

---

1. We note also that, although not a factor in our decision, the police officer who arrested Schmitt testified that he had previously enforced the city's open container ordinance in business parking lots, open to the general public, when individuals returned to their parked vehicles while possessing an open container of beer.