**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 37737**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2012 Opinion No. 1 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 3, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| RAUL MARTINEZ-GONZALEZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. G. Richard Bevan, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Diane M. Walker, Deputy Appellate Public Defender, Boise, for appellant. Diane M. Walker argued.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

_____

GUTIERREZ, Judge

Raul Martinez-Gonzalez appeals from his judgment of conviction for possession of a controlled substance entered pursuant to a conditional guilty plea. Specifically, he challenges the district court's denial of his motion to suppress evidence and/or dismiss the information, arguing the officer lacked probable cause to support a warrantless arrest. For reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Martinez-Gonzalez was arrested in a privately-owned parking lot of an apartment complex, located in a primarily residential area. Called to the scene to investigate suspicious activity around the apartment complex's laundry facilities, police officers encountered Martinez-Gonzalez within the parking lot. He was in the driver's seat of a parked vehicle with two other passengers. When asked what they were doing by the officers, Martinez-Gonzalez

1

said they were drinking in the vehicle because their spouses would get upset if they were drinking in the apartment, which was half a block away within the same complex. After observing open beer cans in both the front and back seats of the vehicle, taking note of Martinez-Gonzalez's slightly slurred speech and glassy eyes and detecting the odor of alcohol, the officers advised Martinez-Gonzalez, who had admitted to consuming alcohol, to walk home. Instead, Martinez-Gonzalez started the vehicle and drove across the parking lot towards apartment thirty-seven. The officers initiated a traffic stop in front of the apartment and asked Martinez-Gonzalez to perform field sobriety tests. Martinez-Gonzalez did not participate. One of the officers thereafter arrested Martinez-Gonzalez on suspicion of driving under the influence (DUI).

During a search of Martinez-Gonzalez upon arriving at the jail, an officer discovered methamphetamine in his coat pocket. A breath test administered at that time revealed Martinez-Gonzalez had a blood alcohol content of .01, well below the legal limit of .08. Idaho Code § 18-8004(1)(a). Accordingly, the State did not charge Martinez-Gonzalez for DUI, but did charge one felony count of possession of a controlled substance. After the charge by information in district court, Martinez-Gonzalez made a motion to suppress or dismiss, asserting the evidence was obtained pursuant to an illegal traffic stop and arrest. Martinez-Gonzalez argued he was arrested under suspicion of DUI on private property not covered by the criminal statute[1] and the arresting officer did not have probable cause that Martinez-Gonzalez was under the influence of alcohol. He further argued the officer's mistakes regarding a lack of probable cause were not reasonable, requiring suppression of the evidence or dismissal. The district court rejected both arguments. The court first found the arresting officer's reasonable suspicion that Martinez-Gonzalez was under the influence of alcohol rose to probable cause after the attempts to administer field sobriety tests. Next, it found the parking lot was "private property open to the public" because it was distinguishable from a private residential driveway based on the following: those permitted on the property were not limited to a small, predetermined group; the tow-away sign did not purport to restrict access to the property; there were no physical barriers preventing access; and evidence showed the apartment complex contained numerous roadways, intersections, and the parking lot. The court, therefore, denied the motion. Martinez-Gonzalez

---

[1] Idaho Code § 18-8004 prohibits driving under the influence "whether upon a highway, street or bridge, or upon public or private property open to the public."

entered a guilty plea to felony possession of a controlled substance, I.C. § 37-2732(c)(1), reserving the right to challenge the denial of his motion. Martinez-Gonzalez timely appeals.

## II.

## DISCUSSION

### A.     Standard of Review

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact unless they are clearly erroneous, but we freely review the application of constitutional principles to the facts as found. *State v. Willoughby*, 147 Idaho 482, 485-86, 211 P.3d 91, 94-95 (2009); *State v. Fees*, 140 Idaho 81, 84, 90 P.3d 306, 309 (2004). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

This Court reviews a district court's decision on a motion to dismiss a criminal action for an abuse of discretion. *State v. Dixon*, 140 Idaho 301, 304, 92 P.3d 551, 554 (Ct. App. 2004); *see* Idaho Criminal Rule 48(a). When a trial court's discretionary decision is reviewed on appeal, the Court determines whether the lower court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion and consistently with any legal standards applicable to the specific choices before it; and (3) reached its decision by an exercise of reason. *State v. Hedger* 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989); *State v. Pole*, 139 Idaho 370, 372, 79 P.3d 729, 731 (Ct. App. 2003).

This case involves the second step of our abuse of discretion review, whether the district court applied the correct legal standards in regards to a constitutional question. When reviewing a finding of probable cause, we defer to the lower court's findings of facts that are supported by substantial evidence and review de novo whether those facts as found constitute probable cause. *State v. Armbruster*, 117 Idaho 19, 784 P.2d 349 (Ct. App. 1989), *superseded by statute on other grounds*, I.C. § 18-8002(4)(b), 1992 Idaho Sess. Laws ch. 133, § 1, *as recognized in Thompson v. State*, 138 Idaho 512, 65 P.3d 534 (Ct. App. 2003).

### B.     Probable Cause to Support a Warrantless Arrest

Martinez-Gonzalez argues the district court erred in denying his motion to suppress evidence and/or to dismiss the information because officers had no probable cause to make the

warrantless arrest. He contends lack of probable cause to arrest made the ensuing search a violation of his rights under the Fourth Amendment to the United States Constitution and Article I, § 17 of the Idaho Constitution, thereby requiring exclusion of the methamphetamine or dismissal of the charge.

A search of a person without a warrant is presumptively violative of the Fourth Amendment to the United States Constitution and Article I, § 17 of the Idaho Constitution unless a recognized exception to the warrant requirement applies. *California v. Acevedo*, 500 U.S. 565, 580 (1991); *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007); *State v. LeClercq*, 149 Idaho 905, 907, 243 P.3d 1093, 1095 (Ct. App. 2010). One well-established exception is a search of the person incident to a lawful arrest. *United States v. Edwards*, 415 U.S. 800, 802 (1974); *State v. Foster*, 127 Idaho 723, 728, 905 P.2d 1032, 1037 (Ct. App. 1995). Without a warrant, a lawful arrest may be made upon probable cause that a crime has been or is being committed in the officer's presence, and any evidence from an ensuing search is generally admissible. *State v. Bishop*, 146 Idaho 804, 816, 203 P.3d 1203, 1215 (2009).

Probable cause for an arrest exists where an officer possesses information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that a person they have placed under arrest is guilty of a crime. *See State v. Julian,* 129 Idaho 133, 136, 922 P.2d 1059, 1062 (1996). Probable cause is not measured by the same level of proof required for conviction. *Id*. Rather, probable cause deals with the factual and practical considerations on which reasonable and prudent persons act. *Brinegar v. United States*, 338 U.S. 160, 175 (1949); *Julian,* 129 Idaho at 136, 922 P.2d at 1062. The court must judge the facts against an objective standard when evaluating an officer's actions. *Julian,* 129 Idaho at 136, 922 P.2d at 1062. That is, whether the facts available to the officer, at the moment of the seizure or search, would warrant a reasonable person in holding the belief that the action taken was appropriate. *Id.* Idaho Code § 18-8004(1) makes it a crime "for any person who is under the influence of alcohol . . . to drive or be in actual physical control of a motor vehicle within this state . . . upon public or private property open to the public." Martinez-Gonzalez argues the officer lacked probable cause that a crime was being committed as to two elements of the statute. He asserts (1) there was insufficient evidence to find he was "under the influence of alcohol,"

and (2) the conduct occurred on private property not "open to the public," meaning even if he were under the influence of alcohol, his actions would not have been a crime.[2]

### 1. Sufficiency of the evidence to establish probable cause of intoxication

Martinez-Gonzalez argues the officer had only a "mere hunch" or an unparticularized suspicion that he was under the influence of alcohol and, therefore, had no probable cause as to the first element of the DUI offense. The State responds that the officer had reasonable suspicion to administer field sobriety tests, which rose to probable cause after Martinez-Gonzalez refused to participate in the field sobriety tests.

This Court has had numerous occasions to determine whether the findings of fact in a particular case constitute probable cause to arrest under suspicion of driving under the influence. In some instances, we have found probable cause where the defendant had driven erratically, emitted a strong odor of alcohol, slurred his speech, and admitted to consuming alcohol. *State v. Robinson*, 144 Idaho 496, 499, 163 P.3d 1208, 1211 (Ct. App. 2007); *see also State v. Finnicum*, 147 Idaho 137, 140, 206 P.3d 501, 504 (Ct. App. 2009) (officers had probable cause where defendant smelled strongly of alcohol, slurred her speech, had bloodshot eyes, seemed confused, and a witness opined she was highly intoxicated); *Armbruster*, 117 Idaho at 20, 784 P.2d at 350 (probable cause established where driver weaved in and out of his lane, smelled of alcohol, slurred his speech, had bloodshot eyes, and admitted to drinking). Under other circumstances, we have found reasonable suspicion on similar facts. *See State v. Ferreira*, 133 Idaho 474, 484, 988 P.2d 700, 710 (Ct. App. 1999). In *Ferreira*, the defendant was speeding before being pulled over, emitted a strong odor of alcohol, and admitted to consuming alcohol. There, we held that whether or not the officer had enough facts to establish probable cause to arrest, he lawfully administered field sobriety tests on the basis of reasonable suspicion that the driver was under the influence of alcohol. *Id.* at 480-82, 988 P.2d at 706-08; *see also State v. Pick*, 124 Idaho 601, 605, 861 P.2d 1266, 1270 (Ct. App. 1993) (officer had reasonable suspicion for detention and to administer field sobriety tests where he detected the odor of alcohol and the defendant slurred her speech and admitted to consuming alcohol). We later concluded that a driver's refusal to participate in field sobriety tests may be a factor in determining whether probable cause exists that a driver is under the influence of alcohol, as the refusal or evasion of field sobriety tests can

---

[2] Martinez-Gonzalez concedes that he was "in actual physical control of a motor vehicle within this state."

5

infer a guilty conscience. *Thompson v. State*, 138 Idaho 512, 515-16, 65 P.3d 534, 537-38 (Ct. App. 2003). Because field sobriety tests are used to either confirm or dispel an officer's reasonable suspicion that a driver is under the influence of alcohol, just as performing poorly on such tests can raise the level of suspicion to probable cause, the driver's refusal to participate may do the same.

Based on the forgoing, we look to the facts found by the district court to determine if the arresting officer had probable cause that Martinez-Gonzalez was under the influence of alcohol. After hearing testimony of the arresting officer, the district court found the following: (1) officers observed open beer cans in the vehicle where Martinez-Gonzalez sat in the driver's seat; (2) Martinez-Gonzalez had slightly glazed eyes and slurred speech; (3) there was an odor of alcohol present; (4) Martinez-Gonzalez had admitted to consuming alcohol; and (5) Martinez-Gonzalez drove his vehicle across the parking lot immediately after the officers advised him not to. Martinez-Gonzalez did not testify or present any witnesses to counter the officer's testimony. From the district court's findings, it is clear the arresting officer was aware that Martinez-Gonzalez was drinking in the vehicle as an alternative to drinking in his nearby home and that he drove across the parking lot toward his apartment. We have no facts to determine if Martinez-Gonzalez indicated how many drinks he had consumed, whether the empty beer cans were his, how long he had been in the vehicle drinking, or if he had been somewhere else previously. We note this because of Martinez-Gonzalez's challenge that his slurred speech was merely a thick accent and that some of the facts found do not necessarily point to being under the influence of alcohol any more than they could point to simply disregarding police instruction. Nonetheless, without such evidence in the record and no contradictory facts to those testified to by the arresting officer, the facts as found by the district court are supported by the record and, based on previously-decided cases, were sufficient to establish probable cause for a DUI arrest.

Even if we were to assume the above facts did not constitute probable cause, they certainly establish reasonable suspicion on which the arresting officer could lawfully conduct field sobriety tests. When Martinez-Gonzalez failed to follow the officer's instructions when administering the tests, the officer may have inferred a consciousness of guilt because Martinez-Gonzalez was asked numerous times to comply with the officer's instructions. After being told he was going to be arrested, Martinez-Gonzalez had a sudden change of heart and was

6

willing to cooperate with the officer. Martinez-Gonzalez argues that his failure to comply with the officer's requests to participate in the field sobriety tests were due to a language barrier, as he is a Spanish speaker, and his inability to understand the instructions given in English, rather than any consciousness of guilt. The arresting officer did testify at the preliminary hearing that he spoke to Martinez-Gonzalez primarily in English and a little in Spanish, to the best of his ability. Yet, the officer also testified that he perceived Martinez-Gonzalez knew English well enough to understand the directions given in English. Without any contradictory testimony or evidence presented by the defense, the district court found that Martinez-Gonzalez understood enough English to know what was being asked of him, bolstered by the fact that after his initial refusals to comply with the officer's request, Martinez-Gonzalez asked in English for another chance to complete the tests. Without conflicting evidence to evaluate, we cannot find this conclusion was in error. The district court found the officer credible and we defer to such credibility determinations of the trial court.[3]

### 2.     Whether the parking lot is "private property open to the public"

Having concluded the facts constitute probable cause as to whether Martinez-Gonzalez was driving under the influence, we next consider whether the officers had probable cause that the conduct occurred on "private property open to the public." In arguing the apartment complex parking lot is not "open to the public," Martinez-Gonzalez contends the lot is more akin to that of a private driveway with limited access, which is property not covered by the DUI statute. The State asserts the parking lot is more characteristic of a business parking lot, covered by the statute, because there were no physical barriers obstructing access, other vehicles and people were present, and there were no general restrictions to the parking area.

The phrase "private property open to the public" is defined in Title 49 of the Idaho Code, the motor vehicle code, and the definition applies to the DUI statute under Title 18 of the Idaho Code. *State v. Knott*, 132 Idaho 476, 479-80, 974 P.2d 1105, 1108-09 (1999), *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, ___ Idaho ___, ___ P.3d ___ (Idaho Nov. 9, 2011). It provides:

---

[3]     The district court also found that, in the alternative, there was probable cause to arrest for violation of the open container law and the arrest may be affirmed on that ground. *See State v. Kerley*, 134 Idaho 870, 873, 11 P.3d 489, 492 (Ct. App. 2000).

"Private property open to the public" means real property not owned by the federal government or the state of Idaho or any of its political subdivisions, but is available for vehicular traffic or parking by the general public with the permission of the owner or agent of the real property.

I.C. § 49-117(16). While the definition provides some guidance, it is ambiguous as to whether the statute applies to the parking lot of a large apartment complex.

When looking at the application of a statute, this Court exercises free review. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). When this Court must interpret ambiguous language, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Rhode*, 133 Idaho 459, 462, 988 P.2d 685, 688 (1999). To ascertain the intent of the legislature, not only must the literal words of the statute be examined, but also the context of those words, the public policy behind the statute and its legislative history. *Id.* In determining the legislative intent as to the scope of a statute, we will examine the reasonableness of proposed interpretations and the policy behind statutes so that all sections of the applicable statutes can be construed together. *J.R. Simplot Co., Inc. v. Idaho State Tax Comm'n,* 120 Idaho 849, 854, 820 P.2d 1206, 1211 (1991); *State v. Gibson*, 126 Idaho 256, 256-57, 881 P.2d 551, 551-52 (Ct. App. 1994), *overruled on other grounds by State v. Knott*, 132 Idaho 476, 974 P.2d 1105 (1999).

This Court has previously examined the DUI statute, its history, and the legislative intent in relation to whether it applied to the parking lot of a privately-owned business. In determining that a tavern parking lot was "private property open to the public," we relied on reasoning that in order to be "open to the public" the use of the property must not be confined to privileged individuals; rather, it is the "indefiniteness or unrestricted quality of potential users that gives a use its public character." *Gibson*, 126 Idaho at 258, 861 P.2d at 553 (quoting *State v. Boucher*, 541 A.2d 865, 867 (Conn. 1988). We looked to physical factors, such as lack of physical barriers or posted signs controlling access to the property, and the nature of the property, such as the fact it was immediately accessible from the public sidewalk and street and any person could patronize the tavern. *Id.* We adopted a rather inclusive approach:

[A]ny parking lot . . . which the general public has access to, is a public parking lot. The terms 'open to the public' and to which 'the public has access' [in drunk driving statutes] are usually held to be broad enough to cover parking lots of restaurants, shopping centers, and other areas where the public is invited to enter and conduct business.

8

*Id.* (quoting *State v. Boucher,* 541 A.2d at 867-68). As an accessible business parking lot, the tavern's parking area was readily subject to the DUI statute.

Subsequently, the Idaho Supreme Court delimited the outer boundaries of the statute's application, concluding it did not cover the driveway of a private residence. *Knott*, 132 Idaho 476, 974 P.2d 1105. The statement of purpose for the DUI statute,[4] noted by the Supreme Court in *Knott*, paralleled the inclusive approach taken by this Court in *Gibson*: "Under this act, school parking lots, park areas, and shopping mall parking lots, etc. would be included. It does not include private property not intended for public use." Statement of Purpose, RS 5374, H.B. No. 502 (1980). However, the Supreme Court concluded that the definition in Title 49, applicable to the DUI statute,[5] precluded finding that a private residential driveway was within the ambit of the statute because private property "open to the public" required that it be "available to the general public." *Knott*, 132 Idaho at 480, 974 P.2d at 1109. Such a requirement clearly demonstrated that a private residential driveway fell outside of that definition. *Id*. To be consistent with both the definition and the statement of purpose, the Supreme Court stated "the fact that social guests and persons with business at the residence are permitted to use the driveway does not make it property available to the general public for vehicular travel or parking." *Id.* In other words, use of a private driveway is limited to a few privileged individuals.

Most recently, in construing whether property is "open to the public" or intended only for private use, we held that a municipal ordinance prohibiting an open container anywhere within the city with the exception of "private parking lots," among some other areas, could nonetheless be applied to the defendant in a parking lot of a privately-owned warehouse. *State v. Schmitt*,

---

[4]     This statement of purpose accompanied the 1980 amendments to the DUI statute, in which language stating what property was covered by the DUI statute was added. *See* 1980 Idaho Sess. Laws ch. 165, § 1. Before the 1980 amendment, the statute simply read "It is unlawful and punishable . . . for any person who is under the influence of intoxicating beverages to drive or be in actual physical control of any motor vehicle *within this state*." I.C. § 49-1102 (1979) (emphasis added).

[5]     This is where the Supreme Court's approach parted company with this Court's rationale in *Gibson*. In *Gibson*, we declined to apply the definition of "private property open to the public" in Title 49 of the Idaho Code to the DUI statute in Title 18 of the Idaho Code, and were overruled on that ground. *State v. Knott*, 132 Idaho 476, 479, 974 P.2d 1105, 1108 (1999), *abrogated on other grounds by Verska v. Saint Alphonsus Reg'l Med. Ctr.*, ___ Idaho ___, ___ P.3d ___ (Idaho Nov. 9, 2011). However, the rationale used to characterize whether property is open to the public or private in nature continues to be of precedential value.

9

144 Idaho 768, 171 P.3d 259 (Ct. App. 2007). Finding that a "private parking lot" was not defined by private ownership, but by public access to it, we looked again at factors used in our analysis of the DUI statute. *Id.* at 771, 171 P.3d at 262. The factors included considering that there were no fences around the warehouse parking lot or posted signs indicating the lot was unavailable to the public, and the lot was the only access to the building's public business entrance. *Id.* at 772, 171 P.3d at 263. We concluded the privately-owned parking lot was generally open to the public and the open container on such property was a violation of the ordinance. *Id.*

While providing factors to consider--specifically whether (1) there are barriers to access, (2) there are signs restricting or controlling access, (3) business is conducted on the premises, and (4) the area is immediately accessible from a public sidewalk or street--our case law fails to answer whether the parking lot of a large apartment complex is "open to the public" because no one factor is determinative. In looking to the case law of other jurisdictions, many courts have found that their respective DUI statutes do apply to the parking lot and other areas around trailer parks, condominiums, and apartment complexes. *See e.g. City of Holland v. Dreyer*, 457 N.W.2d 56 (Mich. Ct. App. 1990) (trailer park was a "place open to the general public" under DUI statute); *Thibaut v. State*, 782 S.W.2d 307 (Tex. Ct. App. 1989) (DUI statute applicable to places available to a substantial group of the public, including "common areas of apartment houses," contemplated and included a condominium complex); *City of Edmonds v. Ostby*, 740 P.2d 916 (Wash. Ct. App. 1987), *rev. denied*, 109 Wash.2d 1016 (Wash. 1987) (finding that statutory language including highways and property "elsewhere throughout the state" did apply to a privately-owned apartment complex parking lot). While there are obvious differences between apartments, condominiums and trailer parks, for the purpose of whether parking lots in such areas are "open to the public," the similarities among them make these cases instructive: each are usually privately-owned and residential, rather than business-oriented, but have common areas where no one resident exercises exclusive control.

In applying its state DUI statute to a trailer park, the Michigan Court of Appeals found that it was a "place open to the general public" covered by the statutory language. *Dreyer*, 457 N.W.2d 56. The court found that, although it was privately maintained, there was open access to the roadway through the park and users of the roadway would not be prosecuted for trespass. Therefore, application of the statute to such an area was necessary to protect the public. *Id* at 57;

*cf. Fenimore v. State*, 78 P.3d 549 (Okla. 2003) (road in a trailer park not covered by the DUI statute because the language did not cover private property). Similarly, in *State v. Turner*, 451 S.E.2d 19 (N.C. Ct. App. 1994), the North Carolina Court of Appeals found its state's DUI statute applicable to a mobile home park. There, the statute applied to "any highway, any street, or any public vehicular area," and the court reasoned that the mobile home park was easily accessible to the public, had no signs prohibiting trespass, and no other showing that it was intended to be a private area. *Id.* at 20.

In contemplating its DUI statute's application to a condominium parking lot, the Supreme Court of Pennsylvania considered factors similar to what this Court examines. *See Commonwealth v. Cozzone*, 593 A.2d 860 (Pa. 1991). The statute there applied to areas "open to the use of the public for purposes of vehicular travel as a matter of right or custom." *Id.* at 862. The Court found there were no posted signs restricting access, there was no gate or other barrier, there was an absence of "no trespassing" signs, and the parking area was used by visitors to the condominiums. The court concluded that even if the area was restricted by signs, but the parking lot was used by members of the public without consequence, as it was in that case, it fell within the statute. *Id.* at 863.

In considering similar factors as well, the Supreme Court of Nebraska held that an apartment complex parking lot fell within its DUI statute. *State v. Prater*, 686 N.W.2d 896 (Neb. 2004). The statute prohibited drunk driving on any property within the state "except private property which is not open to public access." *Id.* at 898. The court noted there was a posted sign at the lot, which stated, "Private parking[.] Unauthorized vehicles will be towed at owners expense." *Id*. at 897. Even still, the lot had no surrounding fence or gate and maintenance people, delivery trucks, and guests were allowed in the parking lot along with tenants. *Id.* at 897, 898. The Court found that although the parking lot may not have been intended for public use, there was no showing of that intent or any indication that the public was prohibited from using the area under any circumstances. *Id*. at 898. The Court concluded there was "public access" even if it was not an area of "public parking." *Id*. In support of its conclusion, the Court stated:

> As other courts have noted, law enforcement should not be required to wait for a driver to enter a public highway before stopping the driver to determine whether he or she is impaired. Public safety requires that DUI statutes and ordinances apply to any property to which the public has access. The purpose of these laws is to protect the public--not to provide a safe harbor for the intoxicated driver in a private parking lot.

11

*Id.* at 899-900. The Superior Court of Pennsylvania, finding that public safety and the policy of its DUI statute supported applying the statute to an apartment complex parking lot, reasoned that even where signs restricted some use, because a significant number of individuals used the lot, they "still deserve and expect to be protected from incidents involving serious traffic offenses." *Commonwealth v. Cameron*, 668 A.2d 1163, 1164 (Pa. Super. Ct. 1995).

In contrast, the courts that did not find their DUI statute applicable to apartment building areas have since been overruled by statute or the areas at issue were clearly closed to the public. For example, in *People v. Williams*, 486 N.E.2d 822 (N.Y. App. Term. 1985), the court found an apartment complex was not covered by its DUI statute because of a restriction in the statutory language that the parking area must be connected with a business. The court concluded an apartment complex could not be considered a business and the sign at the parking lot restricted its use to tenants only. In *People v. McDonnell*, 901 N.Y.S.2d 451 (N.Y. 2010), the court stated that *Williams* had been superseded by statute because an amendment removed the business restriction and the language covering "private roads open to motor vehicle traffic and any other parking lot" of four spaces or more clearly contemplated application to larger apartment building parking lots. *Id*. at 452, 453. In *People v. Krohn*, 58 Cal. Rptr. 3d 60 (Cal. Ct. App. 2007), the court concluded an apartment complex parking lot was not open to the public because it was surrounded by a fence and ingress and egress was controlled by an automatically-locking gate, leaving it largely inaccessible to the general public. *See also State v. McNeil*, 665 A.2d 51 (Vt. 1995) (concluding that a business parking lot was not open to the public because of posted "no trespassing" signs, surrounding fence, and its use primarily for business employees rather than the public).

The consensus among the case law is that where an area is available to more than a markedly few number of individuals and the DUI statute covers property that is publicly accessible or "open to the public," the DUI statute applies unless there is a very clear indication of an intent to keep the public out. That intent can be evaluated by looking at the presence of physical barriers, posted signs, limited access, and consequences for entry, as well as the nature of the property as business or residential. Keeping in mind that the purpose of DUI statutes is to protect the public from the harm an intoxicated driver can cause, other authorities provide persuasive justification that common areas of residential complexes present a circumstance

12

where tenants, visitors, and other members of the public can be put at risk of harm by the conduct of an intoxicated driver.

Our rationales in *Gibson*, *Knott*, and *Schmitt* parallel the approach by other jurisdictions outlined above that apply DUI statutes to private property "open to the public" (or other similar language) and find apartment complex parking lots, and other common areas of residential spaces, may be covered, unless the public is clearly excluded. These courts find it is the fact that more than a few privileged individuals may access the common areas of an unrestricted apartment complex, including the parking lot, which brings such properties within the reach of a DUI statute. Such findings fall directly within this Court's conclusion that it is the "indefiniteness or unrestricted quality of potential users that gives a use its public character." *Gibson*, 126 Idaho at 258, 861 P.2d at 553. In so concluding, we do not stray from the approach previously employed, but we attempt to clarify the two steps necessary to determine if private property is "open to the public" for purposes of Idaho's DUI statute.

First, the private property must be "available for vehicular travel or parking *by the general public.*" I.C. § 49-117(16) (emphasis added). We determined in *Gibson* that the general public does not mean everybody is welcome on the property all of the time, but simply means an indefinite and undefined group of people. *Gibson*, 126 Idaho at 258, 881 P.2d at 553. One needs to consider whether the property is business or residential and whether the area is immediately accessible from a public sidewalk or street. Where the parking lot is part of a residential complex, the size of the complex and whether the location is a common area will also be factors in determining whether it is available to the general public. For example, individual driveways in a duplex or fourplex accessible from a single common way, where a tenant may exercise fairly exclusive control, are likely more akin to a private residential driveway not intended to be covered by the statute, depending on the particular facts and circumstance. With only a few residents living on such property, the group is more definite and defined as opposed to a business, even a small one such as the tavern in *Gibson*, where generally any member of the public is invited to patronize the business--generally making it open to the public subject only to an indication by the owner to keep the public out. Size and capacity of a residential complex is of consequence because the larger the complex, the more its users grow to an indefinite and undefined group and the less control a single resident can exercise over the common areas.

Next, it must be property available to the public "with the permission of the owner." I.C. § 49-117(16). As indicated in the statement of purpose to the DUI statute, this is a question of the owner's intent: the statute does not cover "private property not intended for public use." The intent of the owner is evaluated by observing limitations to access, such as the presence of physical barriers, posted signs restricting the types of users, and whether there are expressed consequences for entry.[6] Just as a business owner may show its intent to keep its parking area private by restricting its use to "employees only" or by some other device, so too may an owner of a residential complex deny permission to the public to access its common areas.

Though this outline intends to aid in answering forthcoming questions of what private property is covered by the DUI statute, we note that without definitive or categorical statutory language, decisions will necessarily have to be made on a case-by-case basis. As this Court is without power to revise statutory language, it is left to the Idaho legislature to delineate a clear boundary between private property that is actually kept private, and private property "open to the public" for purposes of charging a DUI. This is not a problem unique to Idaho, and other legislatures have recognized the need to better define how a DUI statute applies to private property in order to avoid an ad hoc approach.[7] Until such time as that occurs in Idaho, the case-by-case approach will provide uncertain guidance to law enforcement officers as to where they do or do not have authority to arrest for DUI.

---

[6] These factors may also be used in determining the availability of the property to the general public, but perhaps more aptly demonstrate an owner's intent of whether or not the property is to be closed to the public.

[7] For example, New York's statute prohibiting the operation of a motor vehicle while under the influence of alcohol or drugs is applicable to private property "open to motor vehicle traffic and any other parking lot," but the statute further defines what is meant by such language:

> For the purposes of this section "parking lot" shall mean any area or areas of private property, including a driveway, near or contiguous to and provided in connection with premises and used as a means of access to and egress from a public highway to such premises and having a capacity for the parking of four or more motor vehicles. The provisions of this section shall not apply to any area or areas of private property comprising all or part of property on which is situated a one or two family residence.

N.Y. VEH. & TRAF. LAW § 1192(7).

14

Turning to this case, the size of the apartment complex and adjacent parking lots and by nature of it being a common area, we find the parking lot is open to an indefinite number of people. Evidence shows that the complex is comprised of not merely a single entrance and a few residential parking spots, but rather has eight to ten different housing units, three different roadways with at least two intersections, and numerous parking areas. The access to such a large area by a considerable number of tenants, visitors, and other members of the public brings the property within the scope of the DUI statute. Finding that the apartment complex parking lot here is potentially available to any and all users, we consider whether the parking lot is otherwise closed to the public by the presence of physical barriers, posted signs, limited access, or consequences for entry. The district court found no evidence to suggest any barrier controls access to the property. Martinez-Gonzalez provided evidence that there was a sign posted at the entrance of the parking lot stating "Illegally parked and unauthorized vehicles will be towed away at vehicle owner's expense." The district court found, however, that it was a generic sign, simply giving the property owner the ability to remove vehicles pursuant to city code. The sign did not define what vehicles or people were unauthorized, such as by delineating "Tenant Parking Only" or restricting visitor parking to particular spaces within the lot. Instead, the district court found it may be "inferred that guests, in addition to tenants, are free to park on the property" and guests of the apartment complex "are not a limited, predetermined group." Based on the officer's testimony that he had previously been to the property, he saw no gate at the property or other restriction to access, the lot appeared to be a public road or off of a public road, and there were no signs indicating that it was private property, the district court found the arresting officer had probable cause that Martinez-Gonzalez's conduct occurred on "private property open to the public." The district court's factual findings are supported by substantial evidence, and we agree that the posted sign, without more, does not take this property out of reach of the DUI statute.

### III.

### CONCLUSION

We conclude the officer had probable cause that Martinez-Gonzalez was under the influence of alcohol and that Martinez-Gonzalez's conduct occurred on "private property open to the public," covered by the DUI statute. Therefore, Martinez-Gonzalez's arrest was lawful and

the district court properly denied the motion to suppress or dismiss. We affirm Martinez-Gonzalez's judgment of conviction.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**